# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3043WM

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | On Appeal from the United |
| | * | States District Court |
| | * | for the Western District |
| William Danial Hutton, | * | of Missouri. |
| | * | |
| Appellant. | * | |

_____

Submitted: March 16, 2001

Filed: May 16, 2001

_____

Before RICHARD S. ARNOLD, FAGG, and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


William Danial Hutton appeals the sentence imposed by the District Court after he pleaded guilty to bank robbery in violation of 18 U.S.C. § 2113(a). Mr. Hutton argues that the Court erred in assessing a three-level enhancement for brandishing, displaying, or possessing a dangerous weapon under U.S.S.G. § 2B3.1(b)(2)(E). We reverse and remand.

I.

Mr. Hutton robbed the Citizen's Bank of Rogersville in Greene County, Missouri. He presented a teller with a note stating, "[d]on't panic, give me all that you have." Joint Appendix (J.A.) 21. The teller placed the money in a blue plastic bag held open by Mr. Hutton. After his arrest, Mr. Hutton confessed to the robbery. He also admitted to police that during the robbery he had an inoperable replica of a western-styled revolver concealed out-of-sight in the waist band of his pants. Neither the teller, nor anyone else in the bank, ever saw the imitation gun.

Mr. Hutton pleaded guilty to a one-count indictment charging him with bank robbery. At sentencing the District Court assessed a three-level enhancement under U.S.S.G. § 2B3.1(b)(2)(E) for brandishing, displaying, or possessing a dangerous weapon. Rejecting Mr. Hutton's argument that the enhancement was improper because the replica never became visible during the commission of the crime, the Court imposed the enhancement on the basis that Mr. Hutton's possession of the fake gun presented a potential danger, because it could have been exhibited during the commission of the crime. This appeal followed. The question before us is whether a concealed inoperable replica of a gun which was possessed during the commission of a robbery but never used in any way warrants a sentence enhancement under U.S.S.G. § 2B3.1(b)(2)(E).

II.

We review a district court's interpretation of the federal Sentencing Guidelines de novo. United States v. Gonzales, 220 F.3d 922, 926 (8th Cir. 2000). Prior to its amendment,[1] U.S.S.G. § 2B3.1(b)(2)(E) provided that a defendant convicted of a bank

_____

[1]On November 1, 2000, Congress amended both U.S.S.G. §§ 2B3.1(b)(2)(E) and 1B1.1, Application note 1(d). We will discuss those amendments and their implications later in the opinion; however, for now we focus our analysis on the Guidelines which

robbery in which "a dangerous weapon was brandished, displayed, or possessed" received a three-level enhancement to his base offense level.  U.S.S.G. § 2B3.1(b)(2)(E) (1998).  Application note 2 to this section stated, "[w]hen an *object* that *appeared* to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon for the purposes of subsection (b)(2)(E)."  (Emphasis ours.)  Likewise, U.S.S.G. § 1B1.1, Application note 1(d), defined "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury.  Where an *object* that *appeared* to be a dangerous weapon was brandished, displayed, or possessed, treat the object as a dangerous weapon."  (Emphasis ours.)

On appeal Mr. Hutton contends that the enhancement was erroneous for two reasons.  First, there is no dispute that the gun was not real; therefore, it was not in fact a "dangerous weapon" under the Guidelines.  Second, Mr. Hutton never removed the fake gun from his waistband during the robbery; therefore, he argues, it never "appeared" to anyone in the bank that he had a dangerous weapon.

We have never reviewed this issue de novo.[2]  However, two of our sister circuits, the Seventh and the Eleventh, have considered a similar issue.  In United States v. Robinson, 20 F.3d 270, 277-78 (7th Cir. 1994), the court held that possession of a concealed toy gun which was never displayed or brandished during the bank robbery warranted an enhancement under U.S.S.G. § 2B3.1(b)(2)(E).  And United States v. Shores, 966 F.2d 1383 (11th Cir.) (per curiam), cert. denied, 506 U.S. 927 (1992), held that the assessment was proper where a toy gun was found in the right pocket of a defendant who was arrested within ten feet of a bank he intended to rob.  The gun was never drawn and Shores never made it inside the bank.  Like the

_____

were effective at the time of Mr. Hutton's sentencing.

[2]In United States v. Moles, 100 F.3d 960, 1996 WL 656112 (8th Cir. 1996), we upheld a three-level enhancement under U.S.S.G. § 2B3.1(b)(2)(E) where a defendant carried a toy gun in his back pocket during a bank robbery; however, because Moles did not contest the enhancement at sentencing, our review was for plain error only.

defendant here, Shores argued that the assessment was improper because a toy gun only becomes a "dangerous weapon" under the Guidelines only when someone becomes aware of it. Shores contended that since no one ever saw the toy gun it could not have "appeared" to be a dangerous weapon. The Eleventh Circuit disagreed and held,

> Although at first blush the use of "appeared" in the commentary [of U.S.S.G. § 2B3.1(b)(2)(E)] seems to imply that the weapon must be displayed, this inference is dispelled by the further clarifying words of "brandished, displayed *or possessed*." The only way to give meaning to both "appeared" and "possessed" is to interpret "appeared" objectively for cases involving possession. Thus, if a court finds that a particular toy gun is possessed by a defendant and "appears" to be a dangerous weapon in the sense of its potential if displayed, then the toy gun would satisfy application note 1(d) of § 1B1.1 and § 2B3.1, even though it was never actually displayed. To hold otherwise would be to read "possession" right out of the application note.

Shores, 966 F.2d at 1387-88 (emphasis in original).

> In dissent, Judge Roney stated that the court's reasoning

> simply reads out of the commentary the words "was brandished, displayed, or possessed." The Court's converting the word "appeared" to "appears" makes the commentary effectively read: "Where an object appears to be a dangerous weapon, treat the object as a dangerous weapon." The words "brandished, displayed, or possessed" become superfluous because the guideline itself picks up the possession once the object is determined to be a dangerous weapon: "if a dangerous weapon was brandished, displayed, or possessed, increase by 3 levels." U.S.S.G. § 2B3.1(b)(2)(C) (Nov. 1989).

> If the word "appeared" is construed as meaning that the object which is not dangerous but looks dangerous must have made an appearance during the crime, however it is brandished, displayed, or

possessed, then those words do not lose all significance in the commentary. It is possible that the toy gun could have appeared to be dangerous at the time of the crime without being brandished or displayed but merely by being possessed by the defendant. Concealed possession of a toy gun, however, does not satisfy the requirement that the object *appeared* to be a dangerous weapon. If the Sentencing Commission had intended that an object which *appears objectively* to be dangerous should be treated in all respects as if it were a dangerous weapon, the commentary could have easily so provided.

Shores, 966 F.2d at 1389 (emphasis in original). We find Judge Roney's reasoning persuasive and hold that the District Court erred in assessing the enhancement, for the following reasons.

First, the word "appeared" (past tense) in the commentary suggests that the object must have been perceived by someone during the commission of the robbery as "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B.1, cmt. 1(d) (1998). To interpret the commentary otherwise renders what the defendant did with the toy gun during the commission of the robbery, such as whether he displayed or brandished it, irrelevant. According to such an interpretation, mere possession of an object that could have appeared dangerous to those at the crime scene renders the enhancement proper. Most bank robbers presumably possess fingers, which could be stuck into a jacket pocket to look like a gun. Unless they use their fingers to create the appearance of being armed, they do not receive an enhancement just for having them.

Second, the facts in this case are readily distinguishable from those in Shores. Shores was arrested for attempted bank robbery, and stated that he intended to use the toy gun had he completed the crime. Here, Mr. Hutton committed the robbery with the toy gun concealed in the waist band of his pants and totally unperceived by anyone in the bank. The only reason we know Mr. Hutton had an inoperable replica of a gun is because he admitted it to police; thus, not only did Mr. Hutton lack the actual ability

to harm anyone during the robbery, but no one knew he had on his person an object that might have appeared to be dangerous. We do not think an enhancement is warranted under U.S.S.G. § 2B3.1(b)(2)(E) on these facts.

Thus, this case is distinguishable from those in which a defendant receives the enhancement because someone perceived an object to be a dangerous weapon. See United States v. Souther, 221 F.3d 626, 629-30 (4th Cir. 2000), cert. denied, 121 S. Ct. 832 (2001) (holding enhancement proper where defendant placed hand in his coat pocket and presented note stating he had a gun); United States v. Bates, 213 F.3d 1336, 1338-39 (11th Cir.), cert. denied, 121 S. Ct. 666 (2000) (holding enhancement proper where defendant reached into waist band of pants to simulate possession of a dangerous weapon); United States v. Vincent, 121 F.3d 1451, 1455 (11th Cir. 1997) (holding enhancement proper where defendant held finger against victim's side to simulate a dangerous weapon); United States v. Dixon, 982 F.2d 116, 121-24 (3d Cir. 1992), cert. denied, 508 U.S. 921 (1993) (holding enhancement proper where co-defendant wrapped hand in towel and waved it about as if it were a dangerous weapon); United States v. Pool, 937 F.2d 1528, 1531 (10th Cir. 1991) (holding enhancement proper where defendant pointed to jacket to indicate the presence of a dangerous weapon which was in fact a toy gun).

Finally, this is a situation in which the rule of lenity applies. See United States v. Oetken, 241 F.3d 1057, 1060 (8th Cir. 2001) (holding "[w]here there are two plausible readings of a Guideline provision, we apply the rule of lenity and give the defendant the benefit of the reading that results in the shorter sentence," (citing United States v. Pharis, 176 F.3d 434, 436 (8th Cir.1999)). The District Court sentenced Mr. Hutton to 57 months of imprisonment. Without the three-level enhancement, Mr. Hutton would have been exposed to a Guideline range of only 37-46 months.

Subsequent amendments to U.S.S.G. § 2B3.1(b)(2)(E) and Application note 1(d) to U.S.S.G. § 1B1.1, which address this very issue, suggest to us that the prior versions

of the Guidelines were ambiguous as to when the enhancement applied. U.S.S.G. § 2B3.1(b)(2)(E) now provides, "if a dangerous weapon was brandished or possessed, increase by three levels." U.S.S.G. § 2B3.1(b)(2)(E) (2000). The word "displayed" has been removed. Application note 2 to U.S.S.G. § 2B3.1 now states, "an object shall be considered to be a dangerous weapon for purposes of subsection (b)(2)(E) if (A) the object closely *resembles* an instrument capable of inflicting death or serious bodily injury . . .." (Emphasis ours.) Likewise, Application note 1(d) to § 1B1.1 now provides, "[d]angerous weapon" means (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely *resembles* such an instrument  . . .."

According to the historical commentary, the amendment to the definition of "dangerous weapon" in Application note 1(d) of U.S.S.G. § 1B1.1 was to "clarify under what circumstances an object that is not an actual, dangerous weapon should be treated as one for purposes of guideline application." 18 U.S.C.A. § 1B1.1, historical notes, 2000 amendments. Thus, the Guidelines were amended to address the ambiguity created by the words "appeared" and "possessed." Under the amended version, it is clear that an object which looks like a dangerous weapon may warrant an enhancement if it is possessed during a robbery but never seen by anyone. This was not clear before, and we think Mr. Hutton should receive the benefit of any ambiguity that existed when he was sentenced. See United States v. Lazaro-Guadarrama, 71 F.3d 1419, 1421 (8th Cir. 1995).

III.

Accordingly, we hold that the District Court erred in assessing a three-level enhancement under the prior version of U.S.S.G. § 2B3.1(b)(2)(E). We reverse and remand to the District Court for re-sentencing.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.